MORSE & SAMMIS v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO. ET AL.

TAYLOR & CO. v. THE SAME.

1. **Conditional Sale:** UNDER STATUTES OF MINNESOTA: RECORDING: POSSESSION: BILL OF LADING: GOOD-FAITH PURCHASER. The contracts of sale in these cases were made in Minnesota, and subject to the statutes of that state, which provide that contracts for conditional sales, unless recorded, shall be void, as against subsequent purchasers from the vendee, where the possession, whether actual or symbolical, as by a bill of lading of the property, passes to the vendee. The plaintiffs in each case contracted to sell and deliver on car at Minneapolis a car load of wheat, to be inspected when delivered, and then, if found equal to samples, to be paid for in cash. The contracts were not recorded. The wheat was loaded on the cars, and was inspected and accepted by K., who at once, without paying for it, shipped the same to Davenport, Iowa, taking bills of lading which named K. as consignor and H. as

consignee. For each car K. drew at sight upon H., who was his broker at Davenport, for $500, and then attached the drafts to the bills of lading, and deposited them in a bank at Minneapolis, thereby pledging the wheat represented by the bills of lading for the credit obtained upon the drafts. On the same day K. drew against this credit to pay a note of $1,000 which he was owing the bank, and the note was delivered to him. H. accepted the drafts, but, being notified by plaintiffs not to pay them, and that the wheat belonged to them, he never paid them; nor did he ever receive the wheat, because plaintiffs replevied it in these cases, and converted it to their own use, *Held* that, by the terms of the contract between plaintiffs and K., neither the title nor the possession of the grain was to pass to K. until payment was made, but that the possession *did* pass without payment, subject, however, to be terminated at the option of plaintiffs, who still retained the title, but that, before such option was exercised, the bank became a *bona fide* holder for value of the bills of lading, and of the property which they represented, notwithstanding the bills were not endorsed, and that, under the said statute of Minnesota, it was entitled, as an intervenor in these cases, to judgment against each of the plaintiffs and the sureties on his replevin bond for the amount due on one of the drafts; also that such judgment was an extinguishment of H.'s liability to the bank as acceptor of the drafts, as well as of any interest he might have in the subject of the controversy.

*Appeal from Scott Circuit Court*—HON. NATHANIEL FRENCH, Judge.

THURSDAY, OCTOBER 27.

THESE actions involve the same questions, and were tried in the court below as one case, and are submitted upon appeal upon one abstract and argument. The cases involve the question whether certain acts of the parties invested a partnership known as " W. Kelley & Co." with such an interest in two car loads of wheat as that third persons dealing with them as owners thereof are entitled to be protected against the claim of plaintiffs thereto. There was one question of fact in the cases submitted to a jury, and upon the return of a verdict all other questions were then submitted to the court. The judgment was against the plaintiffs, and they appeal.

*Heinz & Hirschl*, for appellants.

*Murphy & Gould* and *James W. Lawrence*, for appellees.

ROTHROCK, J.—The learned judge before whom the case was tried made and filed in the case a finding of facts and his conclusions of law, and, as the facts are somewhat involved, and cannot be briefly stated so as to be understood, and as the conclusions of law appear to us to be stated with remarkable clearness, we here insert all of the findings of the court:

" In these cases, which were tried together by consent of the parties, all questions of law and fact were submitted to the court for determination, with the exception of one question of fact, which was submitted to the jury, with instructions by the court relative to such questions. The question of fact submitted to the jury is hereinafter referred to and set forth.

## " FINDINGS OF FACT.

" The plaintiffs in each case, grain dealers residing at Minneapolis, Minnesota, sold to another firm of grain dealers, (Kelley & Co.,) residing at the same place, on April 1, 1884, a car load of wheat. The contract of sale was oral, and as follows: Plaintiffs agreed to sell and deliver a car load of wheat, like a sample shown, to Kelley & Co., loaded, in Morse & Sammis' case, on a car of the Burlington, Cedar Rapids & Northern, or Chicago, Rock Island & Pacific Railway Co., and in Taylor & Co.'s case, on a car of the Chicago, Milwaukee & St. Paul Railway Co., for which Kelley & Co. agreed to pay ninety cents per bushel. Such sales, according to the custom prevailing at Minneapolis, are cash sales, payment and delivery to be concurrent acts, and such a construction would also be placed on the contract by the law in the absence of such custom, as it is evident that both parties contemplated a cash sale. According to the custom, and also according to what the law is in the absence of such custom, the vendee has the right to inspect the grain after it is placed in the car, before accepting and paying for it, in order that he may reject it if it is not in accordance with the sample. The said plaintiffs directed the delivery of the car load

of grain to Kelley & Co. by directing the elevator company having custody of their grain to load the car for Kelley & Co. In pursuance of this order, the elevator company loaded the car, and delivered it to Kelley & Co. It is not shown that Kelley & Co. were guilty of any fraud in procuring the contract of sale or the delivery of the grain.

"Kelley & Co. received the grain from the elevator company, inspected and accepted it, and on the same day shipped it to George Herman, at Davenport, Iowa, taking a bill of lading for each car load from the railroad company by which it was shipped, in which they were named as consignors, and George Herman as consignee. On the same day, in order to borrow money, they attached each bill of lading to a sight-draft on Herman for $500, and discounted both drafts at the First National Bank of Minneapolis. The bill of lading was attached to each draft by Kelley & Co., with the intention of pledging the grain as security for the payment of the draft, and the draft was discounted, and the money was placed to the credit of Kelley & Co. by the bank in good faith, and in reliance on the delivery of the bill of lading as constituting a pledge of grain. On the same day Kelley & Co. paid (by check on the bank) a note for $1,000 which they owed the bank, and which was given up to them. The credit given for the drafts was drawn against by the check.

"The bank sent the drafts to Herman, at Davenport, who accepted them in good faith, relying on the bills of lading. After acceptance, Herman was notified by plaintiffs not to pay the drafts, and that they owned the grain. It does not appear in what state the grain was at the time of acceptance of the drafts. The drafts were never paid, the grain never delivered to Herman, but the same was taken by the said plaintiffs, respectively, on the writs of replevin in these causes, and converted to their use. Herman was acting as a commission merchant or factor for Kelley & Co., and had not agreed to buy the grain in question. It was his habit to

pay drafts drawn by Kelley & Co. against shipments to him, and to sell the grain for them, deducting from the proceeds his advances and commissions.

" It is conceded that the contracts of sale to Kelley & Co. were not recorded, as required by 1 St. at Large, Minn., 1873, p. 717, § 22, which statutes were offered in evidence.

" The question whether or not plaintiffs waived the condition that title should not pass to Kelley & Co. until payment, was submitted to the jury, and the jury found that the condition was not waived. It is consequently not necessary to detail the circumstances under which the grain was delivered to Kelley & Co. · The court, however, finds that, while such delivery was not a waiver of the condition, it was a complete· delivery of possession, as distinguished from permitting Kelley & Co. to inspect or have manual custody of the grain while in the possession of plaintiffs. It was a complete delivery of possession and control of the grain for the time being, and until plaintiffs might reclaim possession; but, as was found by the jury, such possession was not given with the intention of waiving the condition that the title should not pass until payment, which was never made.

" From the foregoing facts, the court draws the following conclusions: When the contract in question was entered into, it was an agreement for a future sale on certain conditions. On the part of plaintiffs the agreement by them to sell and deliver was conditional upon payment being made at the time of such sale and delivery. Their agreement was to transfer both ownership and possession upon condition of payment being made when such transfer was made. They did not agree to transfer either possession or ownership *prior* to·such payment. . On the part of Kelley & Co. the contract was an agreement by them to pay for the grain upon transfer of ownership and possession, and they were entitled to inspect the grain before accepting such transfer, and could reject it, if not equal to sample.

. " Plaintiffs might waive the condition that the possession

should not be transferred until payment, without waiving the condition that title should not pass until payment, just as they might have contracted in the first instance to deliver the grain at once, but to retain the ownership until payment therefor. In other words, delivery of possession does not necessarily include the transfer of ownership. (*Thorpe v. Fowler*, 57 Iowa, 541.) Had they originally agreed to deliver at once, title to remain in them until payment, which should be made on demand, they would have been in substantially the same condition that they were in when they delivered the grain; waiving the retention of possession, but not waiving the retention of ownership until payment. By waiving their right to retain possession until payment, they voluntarily transformed their executory agreement into a conditional sale partly executed. (Benj. Sales, [4th Amer. Ed. by Corbin,] §§ 360–362; *Thorpe v. Fowler*, *supra*.)

" After the delivery and the acceptance by Kelley & Co., plaintiffs had performed all that was to . be done on their part, and could at once have sued Kelley & Co. for the price of the grain, and the delivery and acceptance would have taken the case out of the statute of frauds. While the vendors were under no obligation to deliver the grain *prior* to payment, it was a delivery under the contract, merely made *sooner* than the vendors were bound to make it. As the *title* was not to pass till payment, the vendors had the right to reclaim possession from the vendees at any time, in default of payment; but upon such payment the title would immediately pass to the vendee without any act on the part of the vendors. While this possession of the vendees prior to payment was subject to termination at any time by the vendors, and was temporary in its nature, and not intended by the vendors to be otherwise, yet it was, nevertheless, until terminated, a rightful possession by the vendee under the contract; and, in case of trespass to the property, suit might have been brought by the vendees. (Benj. Sales, [4th Amer. Ed. by Corbin,] § 426; Benj. Sales, §§ 319–335.)

"Such being the rights of the parties to the contract, it remains to ascertain the rights of purchasers from the vendees. In some states, as in New York, Illinois and Pennsylvania, it is held that a purchaser for value in good faith from the vendee in possession, under such a contract as this, acquires a right to the property superior to that of the owner. In this state, and other states, the common law prevailed, that a man could give no greater right to property than he had. To remedy the evils often resulting from the application of the common-law rule, statutes were framed in this and other states for the protection of purchasers and creditors of the vendee in possession of the property under a conditional sale. The statute of Minnesota, which was introduced in evidence, is such a statute. That statute, (see 1 St. at Large, Minn., p. 717, § 22,) unlike the Iowa statute, does not require that the vendee should be in the '*actual* possession' of the property pursuant to the contract. In cases of sales procured by fraud, and in cases of conditional sales, in those states where the innocent purchaser is protected irrespective of any statute on the subject, the possession of the vendee, when the rights of the creditor or innocent purchaser attach, need not be an actual occupancy or custody of the property. Possession, symbolized by a bill of lading, is the same as actual possession. (Coleb. Col. Sec. §§ 379, 380.)

"It is not likely that the supreme court of Minnesota will add to the statute, and so construe it as to require actual manual possession of the property in the vendee, when the statute is silent in regard to possession by the vendee. In this case the intervenor bank in good faith gave value for the property symbolized by the bills of lading. The giving of the credit, and the use of that credit by Kelley & Co., to cancel their note, made the transaction the same, in legal effect, as the receipt of the bills of lading in payment of the note; and such a payment constitutes the bank a holder for value of the bills of lading, and the property they represented. Creditors who do not give value, but merely levy

an attachment or execution, are protected; and a purchaser who receives the property in *payment* of an existing debt is in a more favorable position, and is even more entitled to the protection of the statute.

" By discounting the drafts, the bank became the owner of the property represented by the bills of lading; and the fact that the bills were not endorsed is immaterial. (Coleb. Col. Sec. §§ 382, 383; *Bank of Minnesota v. Luttgen*, 29 Minn., 363; S. C., 13 N. W. Rep. 151; *Holmes v. Bailey*, 92 Pa. St., 57; *Emery v. Bank*, 25 Ohio St., 360.) The bank became the owner of the grain, however, merely as pledgee, and as security merely for the payment of the drafts. The intervenor, Herman, by accepting the drafts, became liable to the bank. (*Hoffman v. Bank of Milwaukee*, 12 Wall., 181, and cases cited.) But by such acceptance he did not become the owner of the grain, but, upon payment of the draft, he would succeed to the ownership of the grain to the extent of such payment. The recovery by the bank in this case will extinguish the draft, the liability of Herman thereon, and whatever contingent interest he may have in this controversy. It is accordingly found that the intervenor bank recover of plaintiffs, in each case, the amount due on said draft, and that the draft be delivered up to the clerk of the court for cancellation upon payment of this judgment, which may be entered in favor of bank. These findings of fact and law are made in each of said causes.

" The plaintiffs and intervenors except.

" NATH. FRENCH, Judge."

It appears to us that the decision of the circuit court, and the reasoning and grounds upon which it is based, are correct. The findings of fact and opinion of the court are attacked by appellants' counsel in a learned and ingenious argument, which we need not discuss. The reasoning of the trial judge appears to us to be a complete answer to the positions taken by counsel. Very great reliance is placed by counsel upon the case of *Budlong v. Cottrell*, 64 Iowa, 234.

It is claimed that the cited case is conclusive in appellants favor. We do not so regard it, and we deem it sufficient to say that in that case, until settlement was made for the goods not only the title and ownership, but the "*right of posses- sion,*" was to remain in the vendor. In the case at bar the *possession and right of possession* was in Kelley & Co., and this right of possession was in pursuance of the contract of sale.

Appellees ask that judgment be rendered against the sure- ties in appellants' replevin bond. We can see no objection to such a judgment, and it is so ordered.

AFFIRMED.